349 So.2d 630 (1977)
In the matter of THE FLORIDA BAR.
In re AMENDMENT TO CODE OF PROFESSIONAL RESPONSIBILITY (CONTINGENT FEES).
No. 48384.
Supreme Court of Florida.
July 14, 1977.
As Amended on Denial of Rehearing September 30, 1977.
Edward J. Atkins, Miami, President, The Florida Bar, Russell Troutman, Orlando, President, The Florida Bar (On Rehearing), Donald H. Norman, Fort Lauderdale, Member, Board of Governors, and Norman A. Faulkner, Tallahassee, Staff Counsel, The Florida Bar, for petitioner.
Bill Wagner, of Wagner, Cunningham, Vaughan, May & Genders, Tampa, and Robert Orseck, of Podhurst, Orseck & Parks, Miami, for The Academy of Florida Trial Lawyers, Martin Zevin, Fort Lauderdale, Member of The Florida Bar, Henry P. Trawick, Jr., Sarasota, Member of The Florida Bar, and W. Robert Fokes, Tallahassee, for Florida Medical Association, Inc., interested parties.
PER CURIAM.
We have before us a Petition for Amendment of the Code of Professional Responsibility filed by The Florida Bar. It is a matter of original jurisdiction in this Court. A response to the Petition was filed by The Academy of Florida Trial Lawyers. Martin Zevin, Esq., and Henry P. Trawick, Jr., Esq., members of The Florida Bar, filed briefs in opposition to the Petition of The Florida Bar. Ms. Johnnie M. Ridgely, Executive Secretary of the Dade County Bar Association, timely filed a letter response to the Petition. Upon motion to appear as amicus curiae, The Florida Medical Association, Inc. was permitted to file a response to the Petition of The Florida Bar seeking modification of the proposed Amendment. The Academy of Florida Trial Lawyers filed a response in opposition to the position of The Florida Medical Association, Inc.
Bar counsel, Mr. Zevin, and Mr. Trawick all participated in oral argument on the Petition before this Court.
By its Petition, The Florida Bar seeks to amend Disciplinary Rules 2-106 and 2-107 of the Code of Professional Responsibility.[1]
We are advised by The Florida Bar, in its brief and at oral argument, that "there may *631 be occasional abuses in the use of contingent fee contracts." In its response, The Academy of Florida Trial Lawyers states that it recognizes that "in a limited number of circumstances, there have been abuses of the contingent fee system by a limited number of lawyers involving, hopefully, a limited number of clients." It is upon these assertions that The Florida Bar urges the Court to require (i) that all contingent fee arrangements between attorney and client be reduced to writing signed by both; (ii) that no attorney or firm may participate in the fee in any contingent fee agreement matter without the consent of the client in writing; (iii) that in all contingent fee agreement matters each participating attorney or law firm will agree to assume the same legal responsibility to the client for the performance of the services in question; (iv) that in each contingent fee arrangement matter each lawyer involved shall be available to the client for consultation concerning the case; (v) that, without prior court approval, a contingent fee exceeding an expressed standard schedule "shall be presumed clearly excessive"; and (vi) that upon the conclusion of the representation, in the event there is a recovery, the attorney shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating attorney or law firm, which statement is to be signed by each attorney, law firm and the client, with copies distributed to each and a copy retained by each participating attorney for six years after execution of the closing statement, with further provisions for inspection of the contingent fee contract and closing statement by certain designated individuals.[2]
*632 After careful consideration of the arguments of the petitioner and respondents, this Court determines that it is in the best interest of the public to amend the Code of Professional Responsibility with respect to the division and disclosure of contingent fees in personal injury or tort law cases. The resulting increase in accountability to the client in contingent fee cases and availability of information concerning fee arrangements will place the client in a better position to assess the reasonableness of the fee in the first instance and at the same time will facilitate the discovery and discipline of those who abuse the contingent fee system. However, due to the absence of competent evidence demonstrating any significant abuse of contingent fee arrangements within the State, we reject the proposed amendment which would impose a maximum contingent fee schedule and thereby impinge upon the constitutional guarantee of freedom of contract. Although the full implications of the recent decision of the United States Supreme Court in Bates v. State Bar of Arizona, ___ U.S. ___, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), have yet to manifest themselves, the approval of lawyer advertising therein should result in a greater awareness in the public concerning attorneys' services and fees. Thus the "open marketplace" competition promoted by such broader dissemination of information, in and of itself, should tend to be a self-regulating factor in the establishment of fees. The advent of this decision reinforces the conclusions we reach today with respect to the propriety of this Court establishing maximum fee schedules.
While certain elements of the proposed Amendments appear to be reasonable and necessary in certain types of cases, we are convinced immediately of the overbreadth of the proposals. Initially, we are struck by the absence of either allegation or argument to support a compelling reason for inserting a maximum contingent fee schedule in the Code of Professional Responsibility which when surpassed creates the presumption that the fee is clearly excessive. This conclusion is particularly persuasive in view of the constitutional right to make contracts for personal services so long as no fraud or deception is practiced and the contracts are legal in all respects, a principle which will be more fully discussed later. The proposed Amendments apply to contingent fee arrangements in all cases. In this regard, it should be noted that the rules of each jurisdiction cited as authority by The Florida Bar, New York and New Jersey, are limited in application to claims or actions for personal injuries, property damage, wrongful death, loss of services resulting from personal injuries and claims in connection with condemnation or change of grade proceedings (New York)[3] or to claims for damages based upon tortious conduct of another, including products liability claims *633 (New Jersey).[4] Apparently each of these jurisdictions found abuses of the contingent fee arrangement to be limited to the category commonly referred to as tort or personal injury and product liability cases. The arguments made in this Court by some of the respondents would bear out the sense of limiting any such amendments to this category of cases. As has been pointed out by respondents, different considerations are usually present in the cases of commercial and real property claims. The disparity of the client's bargaining power and relative financial resources vis-a-vis the defendant is not so pronounced. Commercial collection matters also offer a different problem since they are often small in dollar amount and difficult of recovery. We observe that the survey results on forwarding fees recited by petitioner at page 6 of its brief relates only to "personal injury law."
The Florida Bar directs our attention to American Trial Lawyers v. New Jersey Supreme Court, 66 N.J. 258, 330 A.2d 350 (1974), wherein a maximum fee schedule adopted by the New Jersey Supreme Court was sustained against constitutional attack. In determining that an evidentiary hearing prior to adoption of its rule was not constitutionally required, the court said at page 354:
"Without further examples, we may conceded [sic] at once that the rule here discussed was not bottomed on an evidentiary hearing, nor even on anything approaching the lengthy investigation by Justice Wasservogel to reveal the abuse of the contingent fee system in New York. That scrutiny preceded the adoption there of the control rule later held valid by decision of the Court of Appeals in Gair v. Peck [6 N.Y.2d 97, 188 N.Y.S.2d 491, 160 N.E.2d 43], supra. It is unrealistic to suppose that cupidity and overreaching end at the banks of the Hudson, and we do not indulge that aberration. Our Supreme Court, as the natural recipient of clients' complaints against the conduct of lawyers, has accumulated experience over the years, as briefly mentioned by Chief Justice Weintraub at the November 6, 1971 hearing... ." (Emphasis supplied)
However, we do not believe that without a showing based on competent evidence it is appropriate for us to indulge the aberration that cupidity and overreaching have not only overrun the banks of the Hudson and inundated the State of New Jersey, but have traversed the Mason-Dixon Line and inexorably worked their way south to flood the peninsula of Florida. It is elemental in our profession that judgments are to be based upon the evidence in the record. By no stretch of the judicial imagination can the record be said to support any remarkable or substantial abuse of the contingent fee system in Florida.
On the basis that the contingent fee is the "poor man's key to the courthouse" our Code of Professional Responsibility, patterned after the American Bar Association proposal, expressly sanctions the contingent fee arrangement.[5] It cannot be denied that there is current today in some quarters a dissatisfaction with the principle of the contingent fee arrangement regardless of its amount. However, the advocates of this school of thought do not limit their assault to the contingent fee. Basically, their philosophy encompasses the idea that claims should be limited because of economic considerations. Nonetheless the people of this State have embraced the philosophy that:
"The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." (Emphasis supplied) Art. I, § 21, Fla. Const.
It is irrefutable that the poor and least fortunate in our society enjoy access to our courts, in part, because of the existence of the contingent fee. Until such time as the people of our State enunciate a different philosophy in their document of fundamental and organic law, we are not disposed to elevate economic considerations above right of access to the courts of this State.
*634 To be sure, recognition of the efficacy of the contingent fee arrangement does not suggest that such fee arrangement is not subject to the same standards of fairness and reasonableness as any other fee arrangement. Disciplinary Rule 2-106, footnote 1, supra, makes it clear that a lawyer shall not enter into any agreement for, charge, or collect an illegal or clearly excessive fee and then enumerates the criteria to be taken into consideration in assessing the reasonableness of any fee. The ethical considerations to be taken into account in determining the reasonableness of any fee are set forth in Ethical Consideration 2-18, Code of Professional Responsibility. Fairly applied, the cited Disciplinary Rule and Ethical Consideration provide meaningful tests for measuring the reasonableness of any fee whether it be fixed or contingent. The circumstances of the case, including the amount of the recovery, dictate the fairness of the fee. The individual lawyer has the unequivocal duty to deal fairly with his client. When he fails to exercise the self-control expected of a member of an honorable profession, he should be promptly disciplined by that profession.
Apart from the lack of demonstrated necessity for imposing an arbitrary maximum fee schedule in contingent fee arrangements, there exists the very real question of infringement of the constitutional rights guaranteed to all citizens to make their own contracts absent any demonstrable, overriding public policy to be served by limiting such right. Although dealing with the power of the Legislature to curtail the liberty to contract, the case of State v. Ives, 123 Fla. 401, 167 So. 394 (1936), is instructive. In invalidating a legislative enactment granting to the Board of Barber Examiners the authority to establish minimum charges for barbering services in different areas of the State, the Court opined:
"The right to make contracts of any kind, so long as no fraud or deception is practiced and the contracts are legal in all respects, is an element of civil liberty possessed by all persons who are sui juris. (citations omitted)
"It is both a liberty and property right and is within the protection of the guaranties against the taking of liberty or property without due process of law. (citations omitted)
"It follows, therefore, that neither the federal nor state governments may impose any arbitrary or unreasonable restraint on the freedom of contract.
"`That freedom however is not an absolute, but a qualified right and is therefore subject to a reasonable restraint in the interest of the public welfare.'" (citations omitted)
* * * * * *
"Freedom of contract is the general rule; restraint is the exception, and when it is exercised to place limitations upon the right to contract, the power, when exercised, must not be arbitrary or unreasonable, and it can be justified only by exceptional circumstances." (citation omitted)

Id. at 398-99.
As alluded to in State v. Ives, supra, freedom of contract is subject to reasonable restraint in the interest of the public welfare. Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974). But if it appears that the regulation under criticism is not in any way designed to promote the health, comfort, safety, or welfare of the community, or that the means employed have no real and substantial relation to the avowed or ostensible purpose, or that there is wanton or arbitrary interference with private rights, the legitimate bounds of the police power may be exceeded. Atlantic Coast Line R.R. Co. v. Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721 (1914).
Not only is there a paucity of evidence that any significant evil is being advanced through utilization of the contingent fee arrangement under the criteria currently enunciated in the Code of Professional Responsibility when measured against the right of the poor to access to our courts, there is a complete absence of any evidence that the proposed maximum fee schedule in contingent fee cases has any real or substantial relation to the cure of the espoused *635 evil. In fact, the converse appears more likely. The proposed maximum fee schedule could result in a patently unreasonable fee in some situations under normal application of the criteria set forth in the Code of Professional Responsibility. However, in such a case the Bar would unquestionably be met with the defense that it was within the permissible range of the fee schedule which petitioner asks this Court to etch within the granite of our canons of conduct.
On the record, briefs and argument before us there is no more rational basis to adopt as a part of our Code of Professional Responsibility the suggested maximum fee schedule than there is to establish such a maximum on the fees contracted for by architects, engineers, accountants or physicians, to name a few similar professions, for their activities to affect the public interest. It may be that to do so would lower the costs of such professional services, although there is no such guarantee. It is just as likely that the result would be to diminish the quality of service clients of these professions would receive or eliminate the services altogether for some. Accordingly, where is the rational basis for the proposed regulation? We deplore overreaching by any member of the legal profession because each is charged with the responsibility, acting in a fiduciary capacity with his or her client, to deal fairly. However, we are persuaded that the most effective way to prevent any such overreaching is through diligent application of the time-tested criteria already contained in the Code of Professional Responsibility. The Florida Bar is charged with the responsibility to prosecute vigorously those who do not observe the Disciplinary Rules. We expect the Bar to discharge that responsibility diligently.[6]
We do not intend through our remarks herein to suggest that we are not possessed of information or judicial knowledge that apparently there have been outrageous abuses in certain areas of Florida respecting settlement or adjustment of automobile accident claims. Even Supreme Court Justices read the newspaper. However, to leap from these reports of fraud, which are said to involve a very small segment of the legal and medical community in the areas involved, to the conclusion that a schedule of contingent fees should be adopted by this Court is absolutely irrational. By such reasoning the fees of all doctors and hospitals should be likewise regulated because some members of that profession and industry similarly have been involved in the fraudulent practices. First, there is no evidence that the existence of contingent fee agreements is a cause of such ignoble practices. Second, the establishment of an additional or different disciplinary rule regarding contingent fee agreements is not likely to redeem or deter professional people who are willing to initiate or participate in fraudulent practices. By their very participation in such practices, they are already knowingly violating the law, prejudicing the administration of justice and, hence, violating existing provisions of the Code of Professional Responsibility.[7]
The full resources of the disciplinary program of The Florida Bar must be brought to bear to ferret out these miscreant members of the profession. The answer to this problem is not the enactment of additional rules or standards, but strict enforcement of existing rules and standards. We are not unmindful of the previous unsuccessful efforts of The Florida Bar to prosecute these individuals. However, it is hoped that all agencies of government as well as representatives of the medical community and insurance industry would cooperate in a coordinated and sustained effort to develop the hard evidence necessary to prosecute those individuals who penalize all the citizens of this State through their fraudulent activities.
*636 While we are not persuaded that a change is needed in the disciplinary rules concerning the amount of fees, we believe a case is made by The Florida Bar, and concurred in by The Academy of Florida Trial Lawyers, to the effect that there are abuses in Florida in the practice of division and disclosure of fees in personal injury or tort law cases. We concur with The Florida Bar that this is a practice which has been tolerated by the organized bar in contravention of the Code of Professional Responsibility because it was thought that the public was better served in the long run by being placed in the hands of competent personal injury trial counsel so that the merits of their claims could be best presented. The proposed Amendments offer several reforms: (i) the client is made aware that the forwarding attorney is participating in the fee and to what extent; (ii) the client must consent to the arrangement; and (iii) the forwarding attorney not only assumes direct liability to the client for performance of the services, but he must also make himself available for consultation with the client. This last function is more than pro forma because more often than not the referring attorney is the "family lawyer" and can perform a meaningful function in this regard.
Similarly, the requirement of a closing statement in personal injury or tort cases (long the practice among experienced lawyers) will provide the client a clear picture of his recovery and should prevent misunderstandings between attorney and client. It also provides an aid to the Bar in prosecuting ethical violations where misconduct occurs.
In consideration of the foregoing, the following Amendments to the Code of Professional Responsibility are hereby approved:
DR 2-106 is amended by adding Section (E).
"(E) Every attorney who, in connection with an action or claim for damages for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in such action, claim or proceeding, whereby his compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by an attorney for himself or for the law firm representing the client. No attorney or firm may participate in the fee without the consent of the client in writing. Each participating attorney or law firm shall sign the contract or agree in writing to be bound by the terms of the contract with the client, and shall agree to assume the same legal responsibility to the client for the performance of the services in question as if the attorney or law firm were a partner of the other attorneys involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of DR 2-107 shall apply to such fee contracts.
"In the event there is a recovery, upon the conclusion of the representation, the attorney shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating attorney or law firm. The closing statement shall be executed by all participating attorneys, as well as the client, and each shall receive a copy. Each participating attorney shall retain a copy of the written fee contract and closing statement for six years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon Order of the Supreme Court of Florida, by a Circuit Judge in Florida, a referee, grievance committee or authorized representative of the Board of Governors of The Florida Bar."
DR 2-107(A)(2) is amended by adding the following underscored language:

*637 "(2) The division is made in proportion to the services performed and responsibility assumed by each, provided that in case of the employment of an attorney for a contingent fee as defined in DR 2-106(E), a division of such fee may only be made between the attorneys involved when:
(a) The client consents in writing signed by him to employment of the other lawyer which writing shall fully disclose that a division of fees will be made and the basis upon which the division of fees will be made.
(b) Each lawyer agrees to assume the same legal responsibility to the client for the performance of the services in question as if he were a partner of the other attorney involved.
(c) Each lawyer involved shall be available to the client for consultation concerning the case."
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, ENGLAND, SUNDBERG, HATCHETT and KARL, JJ., concur.
NOTES
[1] The text of such Rules as they existed on the date of filing the Petition for Amendment is as follows:

"DR 2-106. Fees for Legal Services
(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
(C) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case, nor shall he enter into an arrangement for, charge, or collect any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof.
(D) Charges made by any lawyer or law firm under an approved credit plan shall be only for services actually rendered or cash actually paid on behalf of the client. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer's or law firm's participation in an approved credit plan.
Amended July 9, 1975 ([In re Florida Bar, Fla.] 316 So.2d 52)."
"DR 2-107. Division of Fees Among Lawyers
(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.
(2) The division is made in proportion to the services performed and responsibility assumed by each.
(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.
(B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement."
[2] The Bar urges the addition of the following language in Disciplinary Rule 2-106(B):

"A `contingent fee' as used herein is defined as one contingent upon the recovery of money or other property by a client. In every employment of an attorney where a contingent fee is to be paid, as herein defined, the fee arrangement shall be by written contract, signed by the client, and by an attorney for himself or the law firm representing the client. No attorney or firm may participate in the fee without the consent of the client in writing. If more than one law firm and/or sole practitioner is to participate in the fee, each participating attorney or law firm shall sign the contract or agree in writing to be bound by the terms of the contract with the client, and will agree to assume the same legal responsibility to the client for the performance of the services in question as if the attorney or law firm were a partner of the other attorneys involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of DR 2-107 shall apply to such fee contracts.
The foregoing definition of a contingent fee does not apply to contingent fees in criminal cases which are prohibited by DR 2-106(C).
Any fee in which the contingent portion exceeds the following standard shall be presumed clearly excessive unless the contract therefor is submitted to and approved by the court as hereinafter provided:
(a) 33 1/3% of the recovery, if settled prior to the commencement of suit;
(b) 40% of the recovery at trial or, of the recovery if settled after commencement of suit:
(c) 45% of the recovery if the judgment of the trial court is appealed or post-judgment proceedings are required to enforce the same:
(d) 25% of that portion of any recovery exceeding $500,000, at any stage of proceedings.
With the written consent of the client, a contingent fee contract exceeding the foregoing standards may be entered into if, because of unusual circumstances, the contract is submitted to and approved by the presiding judge or designated alternate of any court in Florida, in which any action for recovery under the contract is to be commenced. These provisions shall apply to all contracts for contingent fees between any attorneys practicing in Florida and any client.
In the event there is a recovery, upon the conclusion of the representation, the attorney shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating attorney or law firm. The closing statement shall be executed by all participating attorneys, as well as the client, and each shall receive a copy. Each participating attorney shall retain a copy of the written fee contract and closing statement for six years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon Order of the Supreme Court of Florida, by a Circuit Judge in Florida, a referee, grievance committee or authorized representative of the Board of Governors of The Florida Bar."
The Florida Bar proposes the following additional language in Disciplinary Rule 2-107(A)(2):
* * * * * *
"... provided further that in case of the employment of an attorney for a contingent fee as defined in DR 2-106(B), a division of such fee may only be made between the attorneys involved provided:
(a) The client consents in a writing signed by him to employment of the other lawyer which writing shall fully disclose that a division of fees will be made and the basis upon which the division of fees will be made.
(b) Each lawyer agrees to assume the same legal responsibility to the client for the performance of the services in question as if he were a partner of the other attorney involved.
(c) Each lawyer involved shall be available to the client for consultation concerning the case."
[3] N.Y. App. Div., 1st Dept., R. 603.4.
[4] N.J.Sup.Ct.R. 1:21-7(c).
[5] Ethical Consideration 2-20, Code Prof. Resp.
[6] We would observe that this Court has recently instituted an independent committee chaired by Mr. Justice Karl to reassess and devise any needed reforms in the entire disciplinary program.
[7] Disciplinary Rule 1-102(A)(3), (4) and (5), Code Prof. Resp.