BARKETT, Justice,
concurring in part, dissenting in part.
I concur with the adoption of the rule established by the majority except for the limitations imposed on contingency fee agreements, to which I dissent.
This matter comes before us upon the invitation of the Bar (in turn acting upon the “invitation” of the legislature * ) to regulate business contracts between freely contracting parties. I have grave reservations about both the manner in which this cause arrives before us and the constitutional propriety of infringing upon a party’s right to contract. I cannot express my concerns any better than former Justice Alan Sundberg did in his minority opinion to the Joint Report of The Commission to Study Contingency Fees and the Tort Litigation Review Commission:
On July 14, 1977, the Supreme Court of Florida published its opinion in the case of In the Matter of The Florida Bar, 349 So.2d 630 (Fla.1977), wherein The Florida Bar’s petition to impose a maximum contingent fee schedule was rejected. The petition was rejected because of the absence of competent evidence of abuse necessary to impose a restriction upon the lawyer’s constitutional guarantee of freedom of contract. In denying the petition the Court reminded the Bar of some principles related to freedom of contract protected by both the federal and Florida Constitutions which I believe bear repeating. Quoting *968 from State v. Ives, 123 Fla. 401, 167 So. 394 (1936), a case dealing with legislation granting to the Board of Barber Examiners the authority to establish minimum charges for barbering services, it was said:
“The right to make contracts of any kind, so long as no fraud or deception is practiced and the contracts are legal in all respects, is an element of civil liberty possessed by all persons who are sui juris.” (citations omitted).
“It is both a liberty and property right and is within the protection of the guaranties against the taking of liberty or property without due process of law”, (citations omitted).
“It follows, therefore, that neither the federal nor state governments may impose any arbitrary or unreasonable restraint on the freedom of contract.” “ ‘That freedom however is not an absolute, but a qualified right and is therefore subject to a reasonable restraint in the interest of the public welfare.’ ” (citations omitted).
“Freedom of contract is the general rule; restraint is the exception, and when it is exercised to place limitations upon the right to contract, the power, when exercised, must not be arbitrary or unreasonable, and it can be justi--fied only by exceptional circumstances.” (citation omitted).
It is difficult to address a “problem” (the “problem of contingency fees”) which even the majority perplexingly concedes does not exist. The apparent consensus is that there is still no competent evidence of abuse of the contingency fee system. Indeed, The Florida Bar’s brief expressly notes:
[Njeither of the two commissions nor the Florida legislature cite any specific findings of abuse of the contingency fee system. ...
Moreover, mechanisms presently exist to adequately correct any specifically determined abuse. I cannot approve the establishment of a general rule applicable to all to address a problem which may be created by a few. In my opinion, the wiser course would be to correct the excesses as they occur.
In addition, the impetus for this rule change is the great cost of medical malpractice. I am reluctant to concur with the majority without evidence that the curtailment of the right to contract will reduce the costs of medical malpractice. The jury award to the injured plaintiff will, presumably, remain the same. I can perceive no valid correlation between the limitations on contingency fee agreements and the costs of medical malpractice. As the New Hampshire Supreme Court said in Carson v. Maurer, 120 N.H. 925, 424 A.2d 825, 839 (1980):
There is no “direct evidence that juries consider attorney’s fees in coming to a verdict ...” and “at least one study shows that juries do not include an assessment of the lawyer’s contingency fee in their allotment of damages.” Jenkins, 52 S.Cal.L.Rev. at 943. Reapportionment of damage awards, therefore, is likely to have an insignificant effect on the size of awards, thereby doing little to reduce medical malpractice insurance rates or to control health care costs.
Moreover, the majority only deals with a small part of the perceived problem. The majority’s proposed solution, for example, fails to address the high cost (consisting primarily of expert witness fees) of presenting such cases to juries. If we must act, I would (reluctantly) limit the fee schedule only to medical malpractice cases and subsequently determine whether the change has effectuated the desired result before applying it to any other areas.
I also fail to discern any rational basis for the adoption by the majority of the fee schedule recommended by the Commission instead of that of The Florida Bar. (Although I concede that neither suggested schedule even purports to be based on empirical data but is rather arbitrarily chosen.)
Lastly, and most importantly, I am reluctant to tamper with a system that does *969 indeed provide the proverbial key to the courthouse door. Without the contingency fee system, the vast majority of our citizens would be unable even to enter the arena, much less to fight evenly against those who, knowing their advantage, would (by virtue of human nature alone, never mind malice or bad motives) not hesitate to press it.
ADKINS and SHAW, JJ., concur.

 We are not called upon at this time to rule upon the validity of the legislative "invitation" contained in section 768.595(7)(a), Florida Statutes (1985).