DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STEVEN B. KATZ** and **LAW OFFICE OF STEVEN B. KATZ, P.A.,** a
Florida professional corporation,
Appellants,

v.

**FRANK, WEINBERG & BLACK, P.L.,** a Florida professional limited
liability company, and **ANTHONY C. VITALE, P.A.,** a Florida
professional corporation,
Appellees.

No. 4D18-1215

[January 30, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit,
Broward County; Sandra Perlman, Judge; L.T. Case No. CACE-17-003948.

Jeffrey C. Schneider, P.A. and Victor Petrescu of Levine Kellogg Lehman
Schneider & Grossman LLP, Miami, and David C. Silver and Jason S.
Miller of Silver Miller, Coral Springs, for appellants.

Steven M. Katzman and Charles J. Bennardini of Katzman Wasserman
Bennardini & Rubinstein, P.A., Boca Raton, for appellee Frank, Weinberg
& Black, P.L.

GROSS, J.

This appeal concerns the claims of lawyers to a participation fee where
none of them complied with the Rules Regulating the Florida Bar. After
oral argument, and while this opinion was circulating in this court, the
parties filed a stipulation of dismissal of appeal. By a separate order, we
dismiss the appeal, but nonetheless issue this opinion because the
situation here (1) is capable of repetition yet evading review and (2) is of
great public importance.

"It is well settled that mootness does not destroy an appellate court's
jurisdiction . . . when the questions raised are of great public importance

or are likely to recur." *Holly v. Auld*, 450 So. 2d 217, 218, n.1 (Fla. 1984)[1]. In addition, we elect to proceed "because the problem that the instant action presents is capable of repetition yet evading review." *State v. Matthews*, 891 So. 2d 479, 484 (Fla. 2004); *see also Caprox Third Ave., LLC v. Donisi Ins. Inc.,* 67 So. 3d 312, 314 (Fla. 4th DCA 2011). The conduct here at issue–the failure to follow rules mandated by the Supreme Court for participation fees–typically occurs in the shadows and rarely emerges in the light of day.

**Original Panel Opinion**

We reverse the award of a participation fee to a law firm because the firm wholly failed to comply with Rule 4-1.5 of the Rules Regulating the Florida Bar.

At the summary judgment hearing below, the parties told the judge that there were no material issues of disputed fact. From that record, the following story emerges.

Steven Katz was employed as an associate at the law firm of Frank, Weinberg & Black ("the law firm") from August 2007 until November 2013. During his employment, he was contacted by Tammie Taylor, a friend of his wife. She asked Katz to represent her in a potential qui tam/whistleblower action against her former employer concerning false claims for Medicare services.

The managing partner of the law firm told Katz that the firm could not take on the case because it lacked expertise in the area. An attorney who shared space with the law firm directed Katz to attorney Anthony Vitale.

Katz and Taylor met with Vitale. Later, Taylor entered into a retainer agreement with Vitale. This retainer agreement makes no reference to Katz or the law firm. Neither Katz nor the law firm signed any retainer agreement with Taylor. On June 2, 2008, Vitale e-mailed Katz and stated

---

[1] *Holly v. Auld*, 450 So. 2d 217 (Fla. 1984) is applicable to the situation presented here. There, the plaintiff doctor sued another for defamation after the plaintiff was denied hospital staff privileges. The jury found for the defendant. The plaintiff appealed to this court which reversed, holding that certain discovery should have been allowed because it was not barred by a statutory privilege. The plaintiff petitioned the Supreme Court for review, but settled the case while the appeal was pending. The Supreme Court rejected the plaintiff's suggestion of mootness and decided the appeal, observing that "mootness does not destroy an appellate court's jurisdiction . . . when the questions raised are of great public importance or are likely to recur." *Id.* at 218 n.1.

"your participation fee is 25% of all attorney's fees, including percentage of attorney portion of the settlement award realized" in the Taylor case.[2]

Vitale filed the Taylor qui tam action in June, 2008. Katz was terminated from the law firm in November 2013, without a written separation agreement. According to Katz, he reached an oral agreement with the law firm that he could take with him all clients he originated that were not homeowners or condominium association clients. The law firm had a different view of the separation.

After leaving the law firm, Katz called Taylor and Vitale about once a year concerning the Taylor case. He continued this limited communication with Taylor and Vitale after he formed his own firm.

In October 2016 the Taylor case settled. On November 15, 2016, Vitale contacted Katz to arrange for transfer of the participation fee. The installment settlement statement for the first settlement disbursal listed Katz's firm as the sole recipient of payment. Vitale asked Katz to provide an invoice from the Katz P.A. for the $500,200.14 participation fee. Vitale also asked Katz to obtain a release from the law firm confirming that it waived any interest in the participation fee.

Katz asked the law firm to execute Vitale's requested release. The law firm refused and sent Vitale a letter in November, 2016 claiming entitlement to the participation fee.

Vitale filed an interpleader complaint. The law firm filed an answer and cross-claimed against Katz seeking entitlement to the fees. Katz cross-claimed against the firm asserting his entitlement to the fees.

Both Katz and the law firm moved for summary judgment. The trial judge denied Katz's motion and granted the law firm's motion. The court reasoned that Katz was an associate of the law firm when he referred the Taylor case to Vitale, and that the law firm was entitled to the participation fees under an agency theory.

On appeal, Katz and the law firm argue contract and agency law, sprinkling in some procedural points, as if this were a garden variety commercial dispute. It is not. Katz and the law firm seek to enforce a

---

[2] In deposition, Vitale said that when he wrote "your participation fee" he was referring to Katz. Later, in an affidavit, he said that he was referring to Katz as an associate of the law firm.

contract that is void because it violates the Rules Regulating the Florida Bar.

At oral argument, counsel for the law firm asserted that we should not concern ourselves with the legality of the underlying fee contract because neither party to this appeal had raised it. Just as the parties cannot by stipulation confer subject matter jurisdiction on a court, the parties to this appeal, by agreeing not to challenge the validity of a void contract violative of public policy, cannot magically elevate that contract into one that a court will enforce. When a contract is void as against public policy, "no alleged right founded upon the contract or agreement can be enforced in a court of justice." *Local No. 234 v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821 (Fla. 1953). "Where the parties to such an agreement are in pari delicto the law will leave them where it finds them; relief will be refused in the courts because of the public interest." *Id.*; *see Harris v. Gonzalez*, 789 So. 2d 405, 409 (Fla. 4th DCA 2001). "The cases are legion that a contract against public policy may not be made the basis of any action either in law or equity." *Local No. 234*, 66 So. 2d at 823.

Rule Regulating the Florida Bar 4-1.5(f)(2) sets forth the requirements imposed upon every lawyer who seeks to share in a contingent fee:

> Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer's compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.[3]

---

[3] We reject the argument that this case falls outside of Rule 4-1.5(f)(4) & (g). Taylor's underlying suit was one involving fraudulent appropriation of federal funds, which involved "property damages" within the meaning of Rule 4-1.5(f)(4). Money is often characterized as "intangible personal property." *See, e.g.*, §

In *Chandris v. Yanakakis*, 668 So. 2d 180 (Fla. 1995), the Supreme Court was clear about the impact of the rule it had authorized, writing that the rule "commands that a contingent fee agreement meet the following requirements:"

> (1) the agreement must be reduced to a written contract; (2) each participating attorney or law firm shall sign the contract or agree in writing to be bound by the terms of the contract with the client; (3) each attorney shall agree to assume the same legal responsibility to the client for the performance of the services in question; and (4) the client shall be furnished with a copy of the signed contract.

*Id.* at 185 (quoting *In re Florida Bar—Amendment to the Code of Professional Responsibility (Contingent Fees)*, 349 So. 2d 630, 632 (Fla. 1977)).

*Chandris* also leaves no doubt that a lawyer's failure to comply with Rule 4-1.5(f)(2) precludes the lawyer from enforcing a contingent fee agreement, including a participation agreement, because such a failure violates public policy:

> Florida contingent fee agreements entered into by attorneys subject to our regulations but which do not comply with the regulations are . . . *void as against the public interest.*
>
> * * *
>
> [W]e hold that a contingent fee contract entered into by a member of The Florida Bar must comply with the rule governing contingent fees in order to be enforceable. We have determined that the requirements for contingent fee contracts are necessary to protect the public interest. *Thus, a contract that fails to adhere to these requirements is against public policy and is not enforceable by the member of The Florida Bar who has violated the rule.* Moreover, enforcing contingent fee agreements that are not in compliance with the rule would be unfair as well as constitute a competitive disadvantage to members of The Florida Bar who do comply with the rule.

---

192.001(11)(b), Fla. Stat. (2017); *Bush v. State ex rel. Dade County*, 191 So. 515, 524 (Fla. 1939).

*Chandris*, 668 So. 2d at 181, 181-86 (Italics supplied, internal footnote omitted).

Neither Katz nor the law firm entered into a written contract called for by the rule. Neither may enforce the 25% contingent participation fee agreement contained in Vitale's email. The agreement is void. Period. *Id.*; *see also The Florida Bar v. Carson,* 737 So. 2d 1069, 1072 (Fla. 1999); *Noris v. Silver,* 701 So. 2d 1238, 1240 (Fla. 3d DCA 1997).

We reject Katz's argument that the settlement statement Taylor signed in 2016, upon receiving a distribution from Vitale, cures the earlier failure to comply with the ethical rules. The rules contemplate that the client's consent be secured at the outset of the case, not when the case is 99.9% over. For example, the requirement that "each attorney shall agree to assume the same legal responsibility to the client for the performance of the services in question" would be empty if a referring attorney were to do so a nanosecond before receiving a participation fee.[4]

The only possibility of recovery *Chandris* leaves open to the law firm and Katz is on the basis of *quantum meruit. Chandris,* 668 So. 2d at 186, n.4. We reverse the final judgment adopting the summary judgment rulings. On remand, the parties to this appeal shall be given the opportunity to present evidence addressed to the quantum meruit issue. From this record, it appears that such recoveries will be negligible, leaving open the issue as to who is entitled to the bulk of the $500,200.14 participation fee. None of the attorneys involved—Vitale, Katz, and the law firm—are without sin. "Interpleader is a long-recognized equitable remedy governed by equitable principles used to determine the rights of parties each of whom claim the right to distribution of the same fund[.]" *Zimmerman v. Cade Enterprises, Inc.,* 34 So. 3d 199, 201 (Fla. 1st DCA 2010). We leave the resolution of this thorny issue to another day.

LEVINE, J., concurs.
FORST, J., concurs specially with opinion.

FORST, J., concurring specially.

---

[4] We distinguish *Patterson v. Law Office of Lauri J. Goldstein*, 980 So. 2d 1234 (Fla. 4th DCA 2008). That case involved an agreement between an attorney and her paralegal to share fees, notwithstanding The Florida Bar Rules of Professional Conduct prohibiting fee-sharing with non-attorneys. *Id.* at 1237 (citing R. Regulating Fla. Bar 4-5.4(a)(4)). We concluded that the agreement was enforceable by the paralegal, as she was not in pari delicto because she was not an attorney. *Id.*

I fully concur in the panel's opinion. In this case the parties are contesting which one is entitled to a "participation fee" of half-a-million dollars. In one corner is Appellant Katz, who brought the client, Tammy Taylor, to the attention of his firm and then to the attention of attorney Vitale, and thereafter spent a few hours each year checking in on the progress of Ms. Taylor's qui tam action. In the other corner stands Appellee, Katz's former employer, the law firm FWB. Its "participation" was through its employment of Katz at the onset of Ms. Taylor's legal journey. Both parties claim full entitlement to the prize purse—twenty-five percent of the attorney's fees paid to attorney Vitale.

Rule 4-1.5(g) of the Rules Regulating the Florida Bar sets forth the restriction with respect to "a division of fee between lawyers who are not in the same firm." In pertinent part, the fee can be divided only if one of two scenarios exist. Fee division is acceptable if "(1) the division is in proportion to the services performed by each lawyer." That is not the case here. Attorney Vitale sent Katz an email in 2007 promising to share one-quarter of his attorney's fees; this promise was not conditioned on either Katz or his law firm performing twenty-five percent of the legal services on Ms. Taylor's claim. *Cf. Joseph Saveri Law Firm, Inc. v. Michael E. Criden, P.A.*, No. 14-CV-01740-EDL, 2015 WL1029364 (N.D. Cal. Mar. 9, 2015) (applying the Rules Regulating the Florida Bar to find a "referral agreement . . . of 12.5% is *per se* a violation of Rule 4–1.5(G)(1) because it provides a fixed percentage of compensation," regardless of work performed).

Alternatively, fee sharing is permitted if, "(2) by written agreement with the client: (A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and (B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made." There is no such "written agreement with the client" in this case, other than an agreement prepared after Ms. Taylor's claim had been resolved. That agreement was reactive; the Rule requires a prospective ("to be available"; "will be made") agreement, prepared at the commencement of the engagement.

Appellant Katz accepts that the Rules Regulating the Florida Bar apply to the instant case and his reply brief acknowledges that the Rules state, absent several exceptions that Katz concedes are not applicable here, that "a lawyer may not give anything of value to a person for recommending the lawyer's services." R. Regulating Fla. Bar 4-7.17(b). In essence, Katz argues that FWB cannot share in the "participation fee" because it didn't "participate," but Katz himself is entitled to partake of the entire $500,000 because he and Vitale had agreed on this cut at the commencement of

Vitale's engagement with Ms. Taylor and he had actually "participated." Putting aside the fact that Katz's argument overlooks the strict requirements of Rule 4-1.5(g), checking in once a year is hardly material participation.

In *Patterson v. Law Office of Lauri J. Goldstein*, 980 So. 2d 1234 (Fla. 4th DCA 2008), we opined that "the doctrine that a contract offensive to public policy is void and unenforceable is based upon the principle that '[w]here the parties to such an agreement are in pari delicto the law will leave them where it finds them; relief will be refused in the courts because of public interest.'" *Id.* at 1237 (citations omitted). This begs the question—what public interest is advanced by prohibiting the referring attorney and his firm from a referral fee, coming from the fee of the attorney to whom the case was referred, not the client (who has not asserted any claim to the contested funds)? I surmise that the public interest is to prevent attorneys referring clients to other attorneys based on the referral fee, rather than the client's best interests. That is particularly so when the client is not properly put on notice of any joint participation (as was the case here—no written agreement signed by the client) and the "participation" agreement is a sham, guaranteeing a set twenty-five percent of the attorney's fee to the referring attorney without regard for the extent of that attorney's actual participation in the case.

Compliance with Rule 4-1.5(g) prevents "participation fees" from becoming "kickbacks." As such, it operates similarly to Florida's Patient Self-Referral Act, section 456.053, Florida Statutes, which governs referral of a patient by a health care provider to another provider in which the referring provider has a financial interest. Such referrals are not totally prohibited, "as long as certain safeguards are present in the arrangement." § 456.053 (2), Fla. Stat.

In this case, both parties ask us to essentially take on the role of potted plants and disregard the safeguards set forth in the Rules Regulating the Florida Bar, since the client is not complaining. For the reasons set forth in the majority opinion and this brief concurrence, I join my colleagues in rejecting both parties' claims to a twenty-five percent participation fee.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***