939 So.2d 1032 (2006)
In re AMENDMENT TO THE RULES REGULATING THE FLORIDA BAR-RULE 4-1.5(F)(4)(B) OF THE RULES OF PROFESSIONAL CONDUCT.
No. SC05-1150.
Supreme Court of Florida.
September 28, 2006.
Stephen H. Grimes and Jerome W. Hoffman of Holland and Knight, LLP, Tallahassee, FL, Petitioners.
John F. Harkness, Jr., Executive Director, Henry M. Coxe, III, President, Major B. Harding, Chair, Special Committee on Amendment 3, and Kenneth L. Marvin, Director of Lawyer Regulation, Tallahassee, FL, The Florida Bar, filing proposed amendments to Rule 4-1.5.
Raquel A. Rodriguez, General Counsel, Executive Office of the Governor; Linda McMullen, General Counsel, on behalf of the Mississippi State Medical Association, Ridgeland, MS, and Jon N. Ekdahl, General Counsel, and Steve I. Ro, on behalf of the American Medical Association, Chicago, IL; Mary Ann Stiles of Stiles, Taylor and Grace, P.A., Tampa, FL, on behalf of Associated Industries of Florida, Inc.; Guy Marvin, President, The Florida Insurance Council, Inc., Tallahassee, FL; Roy C. Young of Young van Assenderp, P.A., Tallahassee, FL, on behalf of the Florida Chamber of Commerce; William W. Large, Tallahassee, FL, on behalf of the Florida Justice Reform Institute; Mark Hicks of Hicks and Kneale, P.A., Miami, FL, on behalf of First Professionals Insurance Company, Proponents.
Barry S. Richard of Greenberg Traurig, P.A., Tallahassee, FL; Roy D. Wasson of Wasson and Associates, Miami, FL, John W. Thornton, Jr. of Thornton and Rothman, President, DCBA, Miami, FL, and Robert J. Fiore, Immediate Past President, DCBA, Miami, FL, on behalf of Dade County Bar Association; Jonathan Friedland, President, Dade County Trial Lawyers Association, and Roy D. Wasson of Wasson and Associates, Miami, FL, on behalf of Dade County Trial Lawyers Association; Theodore J. Leopold of Ricci and Leopold, on behalf of the Palm Beach County Bar Association; Scott T. Johni, Tampa, FL, on behalf of Tampa Bay Trial Lawyers Association; Alexander Clark of Winston and Clark, P.A., President, Plantation, FL, on behalf of Broward County Trial Lawyers Association, Inc.; Mark P. Buell, Tampa, FL, on behalf of the Trial Lawyers Section of The Florida Bar; William E. Hahn, Tampa, FL, and Herman J. Russomanno, Miami, FL, on behalf of the Florida Chapters of the American Board of Trial Advocates; Joel S. Perwin, Miami, FL, on behalf of The Florida Consumer Action Network, Inc.; Tony Fransetta, President, FLARA, Wellington, FL, on behalf *1033 of Florida Alliance for Retired Americans, Inc.; Alan M. Pickert, Jacksonville, FL, on behalf of the Jacksonville Bar Association;
Bard D. Rockenbach of Burlington and Rockenbach, P.A., West Palm Beach, FL, on behalf of Floridians for Patient Protection, Inc.; Robert S. Peck, Washington, D.C., Philip M. Burlington, West Palm Beach, FL, and Weldon Earl Brennan, Tampa, FL, on behalf of Academy of Florida Trial Lawyers, Inc.; Brian J. Wolk, Tallahassee, FL, Claudia B. Greenberg and Tom Pennekamp, Jr. of Grossman and Roth, P.A., Miami, FL, Scott R. McMillen of McMillen, Reinhart and Voght, P.A., Orlando, FL, Roy L. Glass, St. Petersburg, FL, Charles B. Patrick, Miami, FL, Lake H. Lytal, Jr., Lake H. Lytal, III, Lance C. Ivey, Don Fountain, Gregory T. Zele, Darla L. Keen, Marci Fuentes Ball, Kevin C. Smith, Julie H. Littky-Rubin, Barry N. Heisler, II, David Gaspari, and Nancy La Vista of Lytal, Reiter, Clark, Fountain and Williams, West Palm Beach, FL, James J. Traitz of Freshman, Freshman and Traitz, Miami, FL, John K. Lawlor, Andrew Y. Winston and Cam F. Justice of Lawlor, Winston and Justice, P.A., Fort Lauderdale, FL, Steven B. Lesser of Becker and Poliakoff, P.A., Fort Lauderdale, FL, Timothy Carl Blake, Miami, FL, Anthony Britt of Brandon, FL, Charles H. Cohen, Fort Lauderdale, FL, Steven W. Wingo, Ocala, FL, Amy S. Farrior of Schropp, Buell and Elligett, P.A., Tampa, FL, Spencer M. Aronfeld of Aronfeld and Associates, P.A., Coral Gables, FL, John B. Ostrow, Miami, FL, James W. Gustafson, Jr. of Searcy, Denney, Scarola, Barnhart and Shipley, P.A., Tallahassee, FL,
Christian D. Searcy, David J. White, Harry A. Shevin, and Sean C. Domnick of Searcy, Denney, Scarola, Barnhart and Shipley, P.A., West Palm Beach, FL, Theodore Babbitt of Babbitt, Johnson, Osborne and Lechlainche, P.A., West Palm Beach, FL, Kerry E. Mack, Englewood, FL, Andrew Needle and Andrew Ellenberg of Needle, Gallagher and Ellenberg, P.A., Miami, FL, Scott E. Perwin of Kenny Nachwalter, P.A., Miami, FL, Paul J. McConnell of McConnell and Company, Orlando, FL, Stephen G. Charpentier of Childress and Charpentier, P.A., Melbourne, FL, Howard S. Weinstein, Aventura, FL, Stephen R. Williams of Williams, Ristoff and Proper, PLC, New Port Richey, FL, Frederick A. Gunion, Jr., Miami, FL, Paul G. Finizio of Finizio and Finizio, P.A., Fort Lauderdale, FL, Jay S. Weiss, Fort Lauderdale, FL, Milton S. Blaut, Neal W. Hirschfield, Kenneth J. Sobel, Bradley A. Ross, and Jeffrey C. Fox of Greenspoon, Marder, Hirschfeld, Rafkin, Ross, Berger and Abrams Anton, P.A., Fort Lauderdale, FL, Harvey D. Friemdan of Friedman, Rodman and Frank, P.A., Miami, FL, Lauri Waldman Ross, Miami, FL, Jane Kreusler-Walsh, West Palm Beach, FL, Ross Bennett Gampel of the Law office of Klemick and Gampel, P.A., Miami, FL, Thomas C. Staples and H.E. Ellis, Jr. of Staples, Ellis and Associates, P.A., Pensacola, FL, David L. Magidson of Abramson and Magidson, P.A., Homestead, FL, Marc Jay Tannen, P.A., Marc Jay Tannen, Hollywood, FL, Michael Diaz, Jr. of Diaz and Kaiser, LLP, Miami, FL, Lester G. Kates, Coral Gables, FL, Gary E. Susser of Boynton Beach, FL, Richard N. Shapiro and Elizabeth T. Herd of Shapiro and Herd,
Douglas J. McCarron of Feiler, Leach and McCarron, PL, Debra M. Salisbury, Sarasota, FL, N. Paul San Filippo of Seidensticker and San Filippo, LLP, Naples, FL, William E. Partridge of Grossman, Roth and Partridge, Sarasota, FL, Robert Gregory King of the King Law Firm, Ocala, FL, Gary L. Wilkins of Wilkins, Frohlich, Russell, Hanaoka and Mizell, P.A., Port Charlotte, FL, Michael S. Olin, Miami, FL, Gary M. Cohen and Andrew B. *1034 Yaffa of Grossman and Roth, P.A., Boca Raton, FL, C. Rufus Pennington, III of Margol and Pennington, P.A., Jacksonville, FL, John E. Napolitano, Sarasota, FL, William E. Ruffier, Anthony F. Sos, Samuel P. King and Kenneth J. McKenna of Dellecker, Wilson, King, McKenna and Ruffier, Orlando, FL, Ray Goldstein, Stephen W. Buckley, John B. Cechman, J. Jeffrey Rice, Richard L. Purtz, Barry Alan Roth, David H. Harris, Michael J. Ciccarone, Mary G. Jack, Paul A. Ryan, A. Paul Molle and Brian D. Zinn of Goldstein, Buckley, Cechman, Rice and Purtz, P.A., Fort Myers, FL, Barbara Green, Coral Gables, FL, Samuel W. Bearman, Pensacola, FL, Leo A. Thomas, Stephen H. Echsner, John F. Asmar, Virginia M. Buchanan, Robert M. Loehr, Brian H. Barr, William J. Mims, Jr., and Troy A. Rafferty of Levin, Papantonio, Thomas, Mitchell, Echsner and Proctor, P.A., Pensacola, FL, Joseph H. Williams of Troutman, Williams, Irvin, Green, Helms and Polich, P.A., Winter Park, FL, Paul T. Cardillo, Tampa, FL, James M. Corrigan and Christopher P. Janes of Corrigan and Janes, Pensacola, FL, Donna M. Burroughs, Deerfield Beach, FL, J. Scott Murphy of Allen and Murphy, P.A., Maitland, FL,
Martin G. Arnowitz, Fort Myers, FL, David R. Heil, Winter Park, FL, P. Scott Russell, IV, Jacksonville, FL, Steven M. Fahlgren of Hogan and Fahlgren, P.A., Orlando, FL, Kenneth E. Ehrlich of Ehrlich and Tipton, LLC, West Palm Beach, FL, Angelo Marino, Jr., Fort Lauderdale, FL, Wayne C. McCall of Ayres, Cluster, Curry, McCall, Collins and Fuller, P.A., Ocala, FL, Joseph A. Zarzaur, Jr. of McKenzie, Taylor and Zarzaur, P.A., Pensacola, FL, Todd M. Cranshaw and Michael Slick of the Cranshaw Law Firm, Ormond Beach, FL, C. Richard Newsome, Henry N. Didier, Jerri Coletti, R. Frank Melton, II, P. Alexander Gillen, and Andrew Knopf of Newsome and Dider, P.A., Orlando, FL, Gil Haddad, Coral Gables, FL, William C. Gentry and Jennifer Kolinski Millis of W.C. Gentry, P.A., Jacksonville, FL, Jefferson W. Morrow, Jacksonville, FL, Arthur B. Skafidas and Phillip W. Farthing of Cohen, Jayson and Foster, P.A., Tampa, FL, Brian F. LaBovick, Esther U. LaBovick, Carl J. Wald and Susan B. Ramsey of LaBovick, LaBovick and Wald, P.A., Jupiter, FL, David L. Deehl of Deehl and Carlson, P.A., Coral Gables, FL, Richard W. Slawson and Gregory M. Yaffa of Slawson, Cunningham and Whalen, PL, Palm Beach Gardens, FL, Dawn M. Vallejos-Nichols of Avera and Avera, LLP, Gainesville, FL, Lance E. Howden, Palm Beach Gardens, FL, Mark P. Cressman of E. Clay Parker, P.A., Orlando, FL, Kim Patrick Hart of Burkert and Hart, P.A., Fort Myers, FL, Dan Cytryn of Cytryn and Santana, P.A., Tamarac, FL, Matthew J. Cardillo of McLean and Cardillo, P.A., Tampa, FL, Howard C. Coker, M. Wayne Myers, Charles A. Sorenson, Richard R. Alexander and E. Aaron Sprague of Coker, Myers, Schickel, Sorenson and Green, P.A., Jacksonville, FL, Neal A. Roth of Grossman and Roth, P.A., Miami, FL, Michael B. Feiler and Martin E. Leach of Feiler, Leach and McCarron, PL, Coral Gables, FL,
Frank M. Petosa of Petosa and Associates, PL, Boca Raton, FL, A. Clark Cone, West Palm Beach, FL, Council Wooten, Jr., Orman L. Kimbrough, Jr., Bruce A. Gibson, III, Edmund Alonso Normand, and Cindy G. Duque of Wooten, Honeywell, Kimbrough, Gibson, Doherty and Normand, P.A., Orlando, FL, Joseph P. Milton, Jacksonville, FL, James R. Holland, II and Robert R. Underwood of Wettermark, Holland and Keith, LLC, Jacksonville, FL, Joshua A. Whitman, Jacksonville, FL, D. Frank Winkles, Tampa, FL, M. David Shapiro, David L. Goldman, Michael J. Babboni, and Rochelle T. Curley of Shapiro, Goldman and Babboni, P.A., Sarasota, FL, R. Gene Odom of *1035 Guarnieri, Martinez and Odom, P.A., Brandon, FL, Kurt Eugene Lee, Nokomis, FL, Carol Holland, O.D., Jacksonville, FL, Jay Cohen, Fort Lauderdale, FL, John McLaughlin, Kevin McLaughlin and Michael C. McLaughlin of Wagner, Vaughan and McLaughlin, P.A., Tampa, FL, Diana Santa Maria, Fort Lauderdale, FL, Nina B. de Jesus, Hollywood, FL, James J. Daniel, Jacksonville, FL, Debra Zebersky, Hollywood, FL, Edward H. Zebersky of Zebersky and Payne, LLP, Hollywood, FL, Marc A. Gregg, Fort Lauderdale, FL, Douglas G. Rawnsley, Daytona Beach, FL, Robert E. Collier, II and Anthony V. Scalese of Collier and Scalese, PL, Plantation, FL, Richard Roud, Hamilton Beach, New Jersey, Steven T. Vasilaros, Michael J. Politis, and Marla J. Rawnsley of Vasilaros and Politis, P.A., Daytona Beach, FL, Geraldine L. Braun, Fort Lauderdale, FL, Paul J. Cappiello of Harrell and Harrell, P.A., Jacksonville, FL, Thomas F. Slater of Pajcic and Pajcic, P.A., Jacksonville, FL, William Corry, Tallahassee, FL, Marianna Raaidy, Hollywood, FL, Rita Phillips, Gainesville, FL, Linda DiTomaso, Alachua, FL, John W. Staunton, Clearwater, FL, C. Steven Yerrid, Ralph L. Gonzalez, Theresa L. Fiset, and Tammy J. Judge of the Yerrid Law Firm, Tampa, FL, Bill Wagner, Tampa, FL, Pamela Jo Hatley, Tampa, FL, J. Steele Olmstead, Tampa, FL, Mitzi Plunkett, Palm Beach Gardens, FL, John Calhoun Bales of Bales Weinstein, Tampa, FL,
Eric Romano and Todd Romano of Romano, Eriksen and Cronin, West Palm Beach, FL, Frank M. Bedell of Winderweedle, Haines, Ward and Woodman, P.A., Orlando, FL, Maureen Martinez-Schwab, West Palm Beach, FL, C. Ryan Eslinger, Jacksonville, FL, Glenn Klausman and Karen R. Wasson of Jacobs and Goodman, P.A., Altamonte Springs, FL, James E. Messer, Jr., Tallahassee, FL, Stephen Spector, Tallahassee, FL, Scott D. Sheftall and Brian M. Torres of Sheftall and Torres, P.A., Miami, FL, Stephen F. Rossman, Charles H. Baumberger, Manuel A. Reboso, Howard A. Spier, Lincoln J. Connolly and Peter Baumberger of Rossman, Baumberger, Reboso and Spier, P.A., Miami, FL, Paul A. Shoucair, Orlando, FL, Michael Srebnick, Miami, FL, Frank A. Ashton, Eric C. Ragatz, Joel B. Toomey, and Thomas S. Edwards, Jr. of Peek, Cobb, Edwards and Ashton, P.A., Jacksonville, FL, Christopher G. Burns, President of the Jacksonville Trial Lawyers Association, Jacksonville, FL, Eric Halsey, Miami Beach, FL, Deborah J. Gander of Colson, Hicks and Eidson, Coral Gables, FL, Wayne Hogan of Terrell, Hogan, Ellis and Yegelwel, P.A., Jacksonville, FL, Steven M. Meyers of Meyers, Stanley and Waters, Orlando, FL, Nicholas M. Matassini, Tampa, FL, Maggie Rodriguez, Miami, FL, Dorothy Johnson, Miami, FL, Lisha Bowen, Tampa, FL, Dawn M. Ikerd of Ikerd and Ikerd, Orlando, FL, Larry S. Stewart and Stephen F. Cain of Stewart, Tilghman, Fox, and Bianchi, P.A., Miami, FL, Robert F. Spohrer, Greg Maxwell and Robert B. Guild of Spohrer, Wilner, Maxwell, and Matthews, P.A., Jacksonville, FL, R. Scott Costantino of Liles, Gavin, Costantino and George, Jacksonville, FL, Paula Kelly, Tallahassee, FL, Claire Davis, Tallahassee, FL, Robert T. Bergi, Jr., West Palm Beach, FL, Adam M. Fetterman and Arthur B. Cavataro of Fetterman and Associates, North Palm Beach, FL, Joseph M. Traska, Altamonte Springs, FL, A. Scott Noecker, Altamonte Springs, FL, Amy K. Guinan of James, Hoyer, Newcomer and Smiljanich, P.A., Tallahassee, FL,
Joseph D. McFarland, St. Petersburg, FL, Lee D. Gunn, IV, Tampa, FL, Stephen G. Fischer, Miami, FL, Stephen A. Marino, Jr. of Ver Ploeg and Lumpkins, P.A., Miami, FL, Michael K. Bailey of Bailey and Myers, P.A., Maitland, FL, Yvonner R. Volcy, Royal Palm Beach, FL, David Templer, North Miami Beach, FL, Gary M. *1036 Farmer, Jr., Weston, FL, W. Marc Hardesty, Michael S. Tyde, Karl T. Green and Lenn A. Ferrer of Hardesty, Tyde and Green, P.A., Jacksonville, FL, Samuel Howell, West Palm Beach, FL, Todd E. Copeland, Orlando, FL, Landry Steve Lolcy, West Palm Beach, FL, Gonzalo R. Dorta, Coral Gables, FL, Tomas F. Gamba and Hector J. Lombana of Gamba and Lombana, P.A., Coral Gables, FL, G. Bart Billbrough and Geoffrey B. Marks of Billbrough and Marks, P.A., Coral Gables, FL, Peter M. Cardillo, Tampa, FL, Donald M. Hinkle of Hinkle and Foran, Tallahassee, FL, Douglas F. Eaton of HomerBonner, Miami, FL, Francisco J. Vinas of Bryan and Vinas, LLP, Coral Gables, FL, Harley S. Tropin of Kozyak, Tropin and Throckmorton, P.A., Coral Gables, FL, Teresita Leon, Miami Beach, FL, Delia Gelb, Hollywood, FL, Jeffrey S. Reynolds, Palm Beach Gardens, FL, Rosanna Gavilan-Wilder, Miami, FL, Janie M. Litt, South Miami, FL, Suzanne Lzzo Ventresca, Boca Raton, FL, Karen DeSanti, Pembroke Pines, FL, Angela Velando, Hialeah, FL, Deborah E. Johnson, Jupiter, FL, Madeline A. Perez, Jupiter, FL, Edward M. Ricci, Jupiter, FL, June A. Cozza, Palm Beach Gardens, FL, Margaret Sadaka, Palm Beach Gardens, FL, Juanita S. Whitaker, Tequesta, FL, Stephanie Lewis-Simon, RN, LHRM, LNCC, Lake Worth, FL, Faith L. Martinez, Miami, FL, Deanna M. Kimbrough, Miramar, FL, Daryl D. Parks, Benjamin L. Crump, Keisha D. Rice, Althea S. Nicholson, Christopher M. O'Neal, Maja S. Holman and Stenise L. Rolle of Parks and Crump, LLC, Tallahassee, FL, Albert Nabut, Jr., Weston, FL, Martha Lozano, Palm Beach Gardens, FL, Jennifer A. Gaughan, Loxahatchee, FL, Joseph W. Little, Gainesville, FL, and Gail Leverett Parenti of Parenti and Parenti, Miami, FL, Responding with comments.
PER CURIAM.
We have for consideration proposals for amending the Rules Regulating the Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const.
In the November 2004 election, voters of the State of Florida approved the following amendment to the Florida Constitution:
In any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000.00 in all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement, or otherwise, and regardless of the number of defendants. The claimant is entitled to 90% of all damages in excess of $250,000.00, exclusive of reasonable and customary costs and regardless of the number of defendants. This provision is self-executing and does not require implementing legislation.
Art. I, § 26, Fla. Const. In response to this amendment, and pursuant to Rule Regulating The Florida Bar 1-12.1(f),[1] fifty-five members of The Florida Bar, led by attorney Stephen H. Grimes, filed a petition ("Grimes petition"), seeking an amendment to Rule Regulating the Florida Bar 4-1.5(f)(4)(B) governing fees and costs of legal services. The Grimes petition proposed that the following language be added as new subdivision 4-1.5(f)(4)(B)(iii):
(iii) Notwithstanding the preceding provisions of subdivision (B), in medical liability cases, attorney fees shall not exceed the following percentages of all damages received by the claimant, exclusive *1037 of reasonable and customary costs, whether received by judgment, settlement, or otherwise, and regardless of the number of defendants:
a. Thirty percent (30%) of the first $250,000.00.
b. Ten percent (10%) of all damages in excess of $250,000.00.
Subsequently, The Florida Bar filed a response in opposition to the petition.[2] One of the main objections raised by the Bar in response to the Grimes petition was the lack of any applicable provision which would allow a medical liability claimant to waive the right granted by the constitutional amendment in order to obtain counsel of his or her choosing. Many of the comments filed in response to the publication of the Grimes petition's proposal in The Florida Bar News also raised the same objection.
After hearing oral argument, much of which addressed the waiver issue, the Court issued an order directing The Florida Bar to submit its own proposed amendment to rule 4-1.5(f)(4)(B), including but not limited to the following core features:
1. An acknowledgement of the provisions of article I, section 26 of the Florida Constitution;
2. An affirmative obligation on the part of an attorney contemplating a contingency fee contract with a potential client to notify any potential client with a medical liability claim of the provisions of article I, section 26. Such notice provision may include a standard written notice form; and
3. A procedure whereby a medical liability claimant may knowingly and voluntarily waive the rights granted by article I, section 26. Such a proposed procedure may involve judicial oversight or review of the waiver and may include a standard waiver form or otherwise provide for the protection of the rights of a potential client.
In response to the Court's order, the Bar appointed a Special Committee on Amendment 3, chaired by attorney Major B. Harding, which drafted and submitted to the Court a proposed amendment to rule 4-1.5(f)(4)(B).
After being submitted to the Court, the Bar's proposal was published in The Florida Bar News for comment. Several comments were received, including comments in opposition to the Bar's proposal filed by attorney Grimes on behalf of the original fifty-five petitioners, and the Court conducted a second oral argument. We now decline to adopt the Grimes proposed amendment and adopt the Bar's proposed amendment to rule 4-1.5(f)(4)(B) with modifications.
The major components of the rule as proposed by the Bar are: (1) a requirement that a lawyer entering into a contingency fee agreement with a medical liability claimant must inform the client, both orally and in writing, of the client's rights under article I, section 26; (2) a requirement that, if the lawyer chooses not to accept representation of a client under the terms of article I, section 26, the lawyer must advise the client, "both orally and in writing of alternative terms, if any, under which the lawyer would accept the representation of the client, as well as the client's right to seek representation by another lawyer willing to accept the representation under the terms of article I, section 26, Florida Constitution, or a lawyer willing to accept the representation on a fee basis that is not contingent;" and (3) *1038 a requirement that if a client desires to waive any rights under article I, section 26, such waiver must be in writing, under oath, and in the form provided for in the rule; the waiver and acknowledgment form proposed by the Bar to be included in rule 4-1.5(f)(4)(B)(iii) is detailed and specifically acknowledges and sets forth the rights granted to medical liability claimants under article I, section 26.
The comments in opposition to the Bar's proposal center around two main issues: first, whether the right granted in the constitution may be waived; and, second, whether the courts must approve any waiver. The first contention is that the personal right granted to medical liability claimants by article I, section 26 may never be waived because it embraces certain policies that are beyond the control of the claimants themselves. We note, however, that on its face, article I, section 26 unquestionably creates a personal right, one for the direct benefit of a medical malpractice claimant. It is entitled "Claimant's right to fair compensation" and provides that "the claimant is entitled to receive" the stated percentages of the damages. Art. I, § 26(a), Fla. Const. Further, the Bar and other commentators point out that most personal constitutional rights may be waived. See In re Shambow's Estate, 153 Fla. 762, 15 So.2d 837, 837 (1943) ("It is fundamental that constitutional rights which are personal may be waived."); see also City of Treasure Island v. Strong, 215 So.2d 473, 479 (Fla.1968) ("[I]t is firmly established that such constitutional rights designed solely for the protection of the individual concerned may be lost through waiver. . . ."). Numerous instances of judicial recognition of the right to waive constitutional rights have been cited to the Court. For example, even the most basic fundamental constitutional rights, such as the Fifth Amendment right to remain silent and the Sixth Amendment right to counsel may be knowingly and voluntarily waived. See Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Additionally, Florida's highly valued constitutional homestead protection is subject to waiver. See Hartwell v. Blasingame, 564 So.2d 543, 545 (Fla. 2d DCA 1990) ("Although the constitution and statute do not expressly recognize a person's right to waive [homestead] protection, it has long been recognized that an individual is free to knowingly and intelligently forego a right which is intended to protect only the property rights of the individual who chooses to make the waiver."), approved, 584 So.2d 6 (Fla.1991). We also note that nothing in the plain language of article I, section 26 prohibits a waiver of the rights granted. Nevertheless, in the context of this rules case, we decline to actually determine the legal issue of whether the rights granted to medical malpractice claimants under article I, section 26 may be waived.
We have also considered the point raised in opposition to the Bar's proposal that it does not require judicial approval of all waivers of article I, section 26 rights. Attorney Grimes and the original fifty-five petitioners contend that judicial approval of all such waivers must be required due to the conflicting interests that arise when a lawyer negotiates with a potential client to waive a constitutional right in order to obtain the lawyer's services. Accordingly, they urge the Court to adopt an alternative waiver provision with numerous restrictions under which all waivers would be subject to judicial approval which could be given only if "the client has been unable to retain an attorney because of the fee limitations imposed by the Florida Constitution and this rule."
We acknowledge and share the concern that where a lawyer negotiates with a potential client to waive his or her rights under article I, section 26 in order *1039 to obtain the lawyer's services for a fee in excess of that which would otherwise be available under the constitutional provision, there are conflicting interests involved. However, we conclude the alternative waiver provision suggested by opponents goes well beyond the nature of the right granted by article I, section 26 and beyond ensuring that any waiver of that right is knowing and voluntary. Instead, the alternative proposal, for example, would require a determination as to whether the waiver is "necessary" and whether the fee agreed upon is justified or appropriate. In addition, the alternative proposal places a burden upon the potential client, in that it conditions judicial approval of the waiver upon a finding that the client has conducted a "reasonable effort" to obtain counsel willing to provide representation without a waiver. Upon review, we reject these proposed restrictions because we do not find it appropriate to place the courts in the position of unduly restricting the right of a competent adult client to waive his or her rights under article I, section 26. Instead, we believe the court's role, when appropriate, is to ensure that any waiver is made knowingly and voluntarily.
We acknowledge the merit of the Grimes petition that this Court should take some action to recognize the effect of this amendment. However, in recognition of the passage of article I, section 26 and its impact upon agreements for legal representation between claimants and attorneys in Florida, we adopt the proposal by the Bar and reject the Grimes petition. All participating in these proceedings agree on the need for action, with many pointing out that since the passage of article I, section 26, numerous medical malpractice claimants have been made aware of their rights under the amendment and have chosen to waive their rights under that provision in order to obtain counsel of choice. Given the reality that the amendment is now in effect and that waivers are currently being made, we agree there is a need for guidance and uniformity in order to protect both the claimants and attorneys involved. The rule acknowledging the provisions of the amendment and providing for waiver of the personal right granted by the amendment should meet this need.
We conclude that the safeguards included in the Bar's proposal, with minor modification, are sufficient to balance the conflicting interests of the attorney and the potential client at the point in time where negotiation of a contract for representation, including the agreed-upon fee, occurs. As noted, the Bar's proposal allows medical malpractice claimants to waive their rights under article I, section 26 by executing a detailed form of waiver. The waiver form not only is extremely detailed but, importantly, sets forth the actual language of article I, section 26 and requires the client to specifically acknowledge that he or she (1) has been advised that signing the waiver releases an important constitutional right; (2) has been advised of the opportunity to consult with separate and independent counsel and to have the waiver explained or reviewed by a court;[3] (3) agrees to an increase in the attorney fee that would otherwise be owed if the constitutional provision were not waived; (4) has three business days in which to cancel the waiver; (5) wishes to engage the named lawyer or law firm, but is unable to do so because of the constitutional limitation and therefore knowingly and voluntarily waives the constitutional limitation in consideration *1040 of the lawyer or law firm's agreement to represent him or her; and (6) has selected the named lawyer or law firm as counsel of choice, could not otherwise engage their services without the waiver, and specifically states that the waiver is knowingly and voluntarily made.
Further, in order to make the consequences of the waiver even more explicit to a client executing this waiver form, we modify the form to require the client to acknowledge not only that he or she is agreeing to an increased fee, but also to specifically acknowledge the maximum contingency fee percentages currently set forth in rule 4-1.5(f)(4)(B)(i), up to which the lawyer and client may agree, without prior court approval, if the waiver is executed. Under the rule as adopted, judicial approval is mandatory only where a client waives his or her rights under article I, section 26 and agrees to a contingent fee in excess of the maximum contingency fee percentages set forth in rule 4-1.5(f)(4)(B)(i). In such a case, court approval under the process set forth in rule 4-1.5(f)(4)(B)(ii) is necessary. Subdivision (f)(4)(B)(ii) states:
If any client is unable to obtain an attorney of the client's choice because of the limitations set forth in subdivision (f)(4)(B)(i), the client may petition the court . . . for approval of any fee contract between the client and an attorney of the client's choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client's rights and the terms of the proposed contract.
We conclude that these provisions are sufficient to protect the client's interests when negotiating a contract for representation with counsel of choice and to ensure that if the client agrees to waive his or her rights under article I, section 26, the waiver is knowingly and voluntarily made.[4]
We also wish to emphasize that, although the rule we adopt does not require judicial approval of all waivers, it does not prohibit a client from requesting judicial review of the waiver, nor does it prohibit a court from inquiring into the issue of whether the waiver has been knowingly and voluntarily made. We encourage trial judges to be alert and responsive to this issue.
Accordingly, we hereby adopt the amendment to Rule Regulating the Florida Bar 4-1.5(f)(4)(B) as set forth in the appendix to this opinion. Additions are indicated by underscoring. The commentary is offered for explanation only and is not adopted as an official part of the rule. The amendment shall become effective immediately upon the release of this opinion.
It is so ordered.
LEWIS, C.J., and ANSTEAD, PARIENTE, QUINCE, and CANTERO, JJ., concur.
*1041 WELLS, J., concurs in part and dissents in part with an opinion, in which BELL, J., concurs.
WELLS, J., concurring in part and dissenting in part.
I concur in the adoption of the proposed rule, but I dissent from the rule's failure to provide for judicial review of the client's waiver of the Florida constitutional right to have legal fees limited in order to effectively recover damages in the amounts specified in article I, section 26, Florida Constitution. I believe that the procedure needs to include judicial review by a trial judge to determine whether the client's waiver is voluntary and whether the client sufficiently understands that he or she is entitled to the constitutional limitation on fees and costs, and what waiver of that right means under the circumstances of the client's potential case.
Because constitutional rights which are personal may be waived, I am in agreement with the majority that the rule should have a waiver provision. An individual has a constitutional right to freely contract for the payment of attorney fees when no fraud or deception is practiced and the contract is legal in all respects. See In re Florida Bar, 349 So.2d 630 (Fla. 1977); State ex rel. Fulton v. Ives, 123 Fla. 401, 167 So. 394 (1936). There are many reasons why a client would choose a particular lawyer at a rate which would be higher than that charged by other lawyers.
Now, however, the freedom to contract must be considered in light of the constitutional limitations as to attorney fees and costs in medical liability cases. A contract which is in excess of the constitutional limitations would clearly be in violation of the organic law of this State absent a valid waiver.
The appearance of conflict between a lawyer's financial interest in the client waiving the constitutional limitation and the client's financial interest in having the constitutional limitation is self-evident. A simple example is a $2,000,000 case. The constitutional limitation for the attorney fees would limit the fees to no more than $250,000, whereas rule 4-1.5(f)(4)(B)(i) would allow fees in the range of $533,000 to $700,000, depending on whether liability was admitted and the litigation stage at which the case is concluded, with an additional five-percent fee permitted if there is an appeal.
Furthermore, the client is in an obviously disadvantaged position when the client is negotiating with the lawyer as to the waiver. In the vast number of medical liability claims, the clients are not legally sophisticated. They are not corporate or business clients. These are clients who have often been through a medical trauma that has seriously affected them mentally and physically or have had a family member undergo such a trauma and are under those effects at the time they are hiring a lawyer to bring a medical liability claim for their mental and physical injuries. These clients are in the lawyer's office, looking for a legal expert to rely upon for legal advice and help. When presented with long forms with extensive legal language, these clients sign the forms. It is simply not reality to rely solely upon these clients to comprehend from the forms the significance of the legal terms and on that basis have confidence that they knowingly waived their constitutional right.
Because of the self-evident appearance of conflict of interest and because of the disparity of the bargaining position between lawyers and clients, I cannot avoid the conclusion that judicial review should be a part of our rule regulating these contracts. I cannot agree with the majority's footnote 4 that judicial review should not be required because some judges report that the judicial review required by present rule 4-1.5(f)(4)(B)(ii) is "in effect *1042 form over substance." That was not my experience. I found as a lawyer that trial judges took issues related to attorney fees seriously. Now that judges would be reviewing the waiver of a constitutional right, I am confident that trial judges would do a substantive review.
I am certainly interested in developing a procedure under which judicial review would be meaningful. The waiver of a constitutional right deserves and requires meaningful review. I am confident that experienced trial judges can determine whether a client sufficiently understands his or her constitutional right to the limitation of attorney fees and costs, and what a waiver of that right means under the circumstances of a particular case. I cannot accept that such review has to be or should be "form over substance."
Our courts' strong history of judicial review as to other types of waivers further supports my belief that judicial review would be just as effective in this situation. There is a common understanding throughout our case law and rules of court, and throughout the United States Supreme Court case law that a person must understand his or her constitutional right and voluntarily waive that right in order for the waiver to be effective. See Cochran v. State, 117 So.2d 544, 547 (Fla. 3d DCA 1960) ("It is axiomatic that a person may waive the privilege against self-incrimination. . . . There can be no waiver if the defendants do not know their rights.") (quoting Killpatrick v. Superior Court, 153 Cal.App.2d 146, 314 P.2d 164, 167 (1957)); Fla. Rule of Crim. Pro. 3.170(k) ("No plea of guilty or nolo contendere shall be accepted by a court without the court first determining, in open court . . . that the circumstances surrounding the plea reflect a full understanding of the significance of the plea and its voluntariness. . . ."). We have legions of cases explaining the necessity for and the role of independent magistrates to review government activities that impinge upon constitutional rights. Every day, our courts hear applications for search warrants, thus illustrating that individual judicial review (even where performed ex parte) ensures that an individual's constitutional rights are protected, although the citizen can decide to waive such a right. Our courts regularly review whether waivers of constitutional rights are valid and effective to waive a right.
Our courts also have a long history of judicial review of the contingency fee contracts of attorneys in various kinds of cases, including cases where common funds are created, see Kuhnlein v. Dep't of Revenue, 662 So.2d 309, 311 (Fla.1995), and in cases involving minors, see Phillips v. Nationwide Mut. Ins. Co., 347 So.2d 465, 466 (Fla. 2d DCA 1977) (holding that a court has the inherent jurisdiction and right to protect minors and their property and to determine whether a contract by which the attorney was employed was fair and reasonable at the time it was entered into); Wilson v. Griffiths, 811 So.2d 709, 712 (Fla. 5th DCA 2002) (holding that the court had jurisdiction to decide whether a settlement, including the amount of attorney fees, was in the best interest of the minor victim); Nixon v. Bryson, 488 So.2d 607, 609 (Fla. 3d DCA 1986) (holding that a court must consider whether the contract was fair in relation to the legal services performed).
In Kuhnlein, 662 So.2d at 311, this Court recognized the apparent conflict of counsel in respect to attorney-fee claims:
Class counsel's role in these cases essentially changes from one of fiduciary for the class to claimant against the clients' fund created for the clients' benefit. Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985). Accordingly, class *1043 counsel is not in a position to effectively represent the interests of the class in respect to the assessment of attorney fees and costs.
While in Kuhnlein we were concerned with a contingency percentage amount with respect to a common fund created in a class action, I find there to be a similar appearance of conflict when a lawyer is seeking a waiver of the constitutional limitation on contingency fee amounts.
As alluded to above, our rule 4-1.5(f)(4)(B)(ii) presently has a requirement for judicial approval of contingency fee contracts which are in excess of the contingency fee percentages authorized in rule 4-1.5(f)(4)(B)(i). Now that there is a constitutional limitation on attorney fees in medical liability cases, I conclude that judicial approval of a client's waiver of the constitutional limitations logically must follow. Certainly, the placement of this limitation in the constitution makes a waiver of the constitutional limitation qualitatively equal to if not more important than the charging of a fee in excess of an amount designated by a rule of discipline.
I recognize that requiring an attorney to obtain judicial review of a waiver is burdensome. Clearly, medical liability cases are often legally and medically complex and require the most skilled of lawyers to handle the cases. Individuals who are the victims of medical negligence require representation by this kind of skilled lawyer. While I am concerned that the burden of obtaining judicial review of a waiver may deter skilled lawyers from representing clients in medical liability cases, I do not believe that the judicial review of these waivers would do that. The skilled lawyers that I know across this State have a commitment above all to the victims of medical liability and to our profession.
I also know that as lawyers we have the highest obligation of any citizen to safeguard our constitutional rights. We take an oath to protect and defend the constitution and readily accept that obligation every day in many ways. We, as a Court, as lawyers, and as individuals, have rightly spoken out that public trust and confidence are absolutely necessary to a properly functioning, independent judiciary in which lawyers are officers. I conclude that this particular constitutional provision requires us as lawyers to go the extra step to ensure that what the people have put into the constitution is protected and that it is protected in a way that demonstrates to all that we are ensuring that a client's constitutional right is safeguarded.
BELL, J., concurs.

APPENDIX

RULE 4-1.5 FEES AND COSTS FOR LEGAL SERVICES
(a) [No Change]
(b) [No Change]
(c) [No Change]
(d) [No Change]
(e) [No Change]
(f) Contingent Fees. As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subdivision (f)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the *1044 lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer's compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
(3) A lawyer shall not enter into an arrangement for, charge, or collect:
(A) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(B) a contingent fee for representing a defendant in a criminal case.
(4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only under the following requirements:
(A) The contract shall contain the following provisions:
(i) "The undersigned client has, before signing this contract, received and read the statement of client's rights and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s)."
(ii) "This contract may be cancelled by written notification to the attorney at any time within 3 business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to the attorney for the work performed during that time. If the attorney has advanced funds to others in representation of the client, the attorney is entitled to be reimbursed for such amounts as the attorney has reasonably advanced on behalf of the client."
(B) The contract for representation of a client in a matter set forth in subdivision (f)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
(i) Without prior court approval as specified below, any contingent fee that exceeds the following standards *1045 shall be presumed, unless rebutted, to be clearly excessive:
a. Before the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action:
1. 33 1/3% of any recovery up to $1 million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
b. After the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action, through the entry of judgment:
1. 40% of any recovery up to $1 million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
c. If all defendants admit liability at the time of filing their answers and request a trial only on damages:
1. 33 1/3% of any recovery up to $1 million; plus
2. 20% of any portion of the recovery between $1 million and $2 million; plus
3. 15% of any portion of the recovery exceeding $2 million.
d. An additional 5% of any recovery after institution of any appellate proceeding is filed or post-judgment relief or action is required for recovery on the judgment.
(ii) If any client is unable to obtain an attorney of the client's choice because of the limitations set forth in subdivision (f)(4)(B)(i), the client may petition the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for approval of any fee contract between the client and an attorney of the client's choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client's rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. A petition under this subdivision shall contain a certificate showing service on the client and, if the petition is denied, a copy of the petition and order denying the petition shall be served on The Florida Bar in Tallahassee by the member of the bar who filed the petition. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under subdivisions (a) and (b).
(iii) Subject to the provisions of 4-1.5(f)(4)(B)(i) and (ii) a lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for medical liability *1046 whereby the compensation is dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall provide the language of article I, section 26 of the Florida Constitution to the client in writing and shall orally inform the client that:
a. Unless waived, in any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000.00 of all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement, or otherwise, and regardless of the number of defendants. The claimant is entitled to 90% of all damages in excess of $250,000.00, exclusive of reasonable and customary costs and regardless of the number of defendants.
b. If a lawyer chooses not to accept the representation of a client under the terms of article I, section 26 of the Florida Constitution, the lawyer shall advise the client, both orally and in writing of alternative terms, if any, under which the lawyer would accept the representation of the client, as well as the client's right to seek representation by another lawyer willing to accept the representation under the terms of article I, section 26 of the Florida Constitution, or a lawyer willing to accept the representation on a fee basis that is not contingent.
c. If any client desires to waive any rights under article I, section 26 of the Florida Constitution in order to obtain a lawyer of the client's choice, a client may do so by waiving such rights in writing, under oath, and in the form provided in this rule. The lawyer shall provide each client a copy of the written waiver and shall afford each client a full and complete opportunity to understand the rights being waived as set forth in the waiver. A copy of the waiver, signed by each client and lawyer, shall be given to each client to retain, and the lawyer shall keep a copy in the lawyer's file pertaining to the client. The waiver shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements provided in 4-1.5(f)(5).
WAIVER OF THE CONSTITUTIONAL RIGHT PROVIDED IN ARTICLE I, SECTION 26 OF THE FLORIDA CONSTITUTION
On November 2, 2004, voters in the State of Florida approved The Medical Liability Claimant's Compensation Amendment that was identified as Amendment 3 on the ballot. The amendment is set forth below:
The Florida Constitution
Article I, Section 26 is created to read "Claimant's right to fair compensation." In any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000 in all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement or otherwise, and regardless of the number of defendants. The claimant is entitled to 90% of all damages in excess of $250,000, exclusive of reasonable and customary costs and regardless of the number of defendants. This provision is self-executing and does not require implementing legislation.
The undersigned client understands and acknowledges that (initial each provision):
*1047 I have been advised that signing this waiver releases an important constitutional right; and
I have been advised that I may consult with separate counsel before signing this waiver; and that I may request a hearing before a judge to further explain this waiver; and
By signing this waiver I agree to an increase in the attorney fee that might otherwise be owed if the constitutional provision listed above is not waived. Without prior court approval, the increased fee that I agree to may be up to the maximum contingency fee percentages set forth in Rule Regulating The Florida Bar 4-1.5(f)(4)(B)(i). Depending on the circumstances of my case, the maximum agreed upon fee may range from 33 1/3% to 40% of any recovery up to $1 million; plus 20% to 30% of any portion of the recovery between $1 million and $2 million; plus 15% to 20% of any recovery exceeding $2 million; and
I have three (3) business days following execution of this waiver in which to cancel this waiver; and
I wish to engage the legal services of the lawyers or law firms listed below in an action or claim for medical liability the fee for which is contingent in whole or in part upon the successful prosecution or settlement thereof, but I am unable to do so because of the provisions of the constitutional limitation set forth above. In consideration of the lawyers' or law firms' agreements to represent me and my desire to employ the lawyers or law firms listed below, I hereby knowingly, willingly, and voluntarily waive any and all rights and privileges that I may have under the constitutional provision set forth above, as apply to the contingency fee agreement only. Specifically, I waive the percentage restrictions that are the subject of the constitutional provision and confirm the fee percentages set forth in the contingency fee agreement; and
I have selected the lawyers or law firms listed below as my counsel of choice in this matter and would not be able to engage their services without this waiver; and I expressly state that this waiver is made freely and voluntarily, with full knowledge of its terms, and that all questions have been answered to my satisfaction.

ACKNOWLEDGMENT BY CLIENT FOR PRESENTATION TO THE COURT
The undersigned client hereby acknowledges, under oath, the following:
I have read and understand this entire waiver of my rights under the constitutional provision set forth above.
I am not under the influence of any substance, drug, or condition (physical, mental, or emotional) that interferes with my understanding of this entire waiver in which I am entering and all the consequences thereof.
I have entered into and signed this waiver freely and voluntarily.
I authorize my lawyers or law firms listed below to present this waiver to the appropriate court, if required for purposes of approval of the contingency fee agreement. Unless the court requires my attendance at a hearing for that purpose, my lawyers or law firms are authorized to provide this waiver to the court for its consideration without my presence.
DATED this ____ day of ____,
____.
By:______
 CLIENT
Sworn to and subscribed before me this
____ day of ____, ____ by
____, who is personally known
*1048
to me, or has produced the following identification:
____.
____
Notary Public
My Commission Expires:
Dated this ____ day of ____, ____.
By: __________
 ATTORNEY
(C) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client's rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client's file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as subdivision (f)(5).
(D) As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) shall be on the following basis:
(i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
(ii) To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
(iii) The 25% limitation shall not apply to those cases in which 2 or more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply to the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for authorization of the fee division in excess of 25%, based upon a sworn petition signed by all counsel that shall disclose in detail those services to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint, or within 10 days of execution of a contract for division of fees when new counsel is engaged. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this subdivision shall contain a certificate showing service on the client and, if the application is denied, a copy of the petition and order denying the petition shall be served on The Florida Bar in Tallahassee by the member of the bar who filed the petition. Counsel may proceed with representation of the client pending court approval.
(iv) The percentages required by this subdivision shall be applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.
(5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing *1049 statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of the closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for 6 years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
(6) In cases in which the client is to receive a recovery that will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall be calculated only on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, this limitation does not apply. No attorney may negotiate separately with the defendant for that attorney's fee in a structured verdict or settlement when such separate negotiations would place the attorney in a position of conflict.
(g) [No Change]
(h) [No Change]

STATEMENT OF CLIENT'S RIGHTS FOR CONTINGENCY FEES

[No Change]

Comment
Bases or rate of fees and costs [No Change]
Terms of payment [No Change]
Prohibited contingent fees [No Change]
Contingent fee regulation
Subdivision (e) is intended to clarify that whether the lawyer's fee contract complies with these rules is a matter between the lawyer and client and an issue for professional disciplinary enforcement. The rules and subdivision (e) are not intended to be used as procedural weapons or defenses by others. Allowing opposing parties to assert noncompliance with these rules as a defense, including whether the fee is fixed or contingent, allows for potential inequity if the opposing party is allowed to escape responsibility for their actions solely through application of these rules.
Rule 4-1.5(f)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
Rule 4-1.5(f)(4)(B) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncontingent and part contingent attorney's fees, rule 4-1.5(f)(4)(B) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(f)(4)(B). Rule 4-1.5(f)(4)(B) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4-1.5(f)(4)(B).
The limitations in rule 4-1.5(f)(4)(B)(i)(c) are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent *1050 of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4-1.5(f)(4)(B)(ii) provides the limitations set forth in subdivision (f)(4)(B)(i) may be waived by the client upon approval by the appropriate judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee that would exceed rule 4-1.5(a) or (b). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent the client or the case involves complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule but not a contingent fee that would exceed rule 4-1.5(b).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands the right to have the limitations in rule 4-1.5(f)(4)(B) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim that is the subject of the contract.
The proceedings before the trial court and the trial court's decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law or rules of evidence.
Rule 4-1.5(f)(4)(B)(iii) is added to acknowledge the provisions of article 1, section 26 of the Florida Constitution, and to create an affirmative obligation on the part of an attorney contemplating a contingency fee contract to notify a potential client with a medical liability claim of the limitations provided in that constitutional provision. This addition to the rule is adopted prior to any judicial interpretation of the meaning or scope of the constitutional provision and this rule is not intended to make any substantive interpretation of the meaning or scope of that provision. The rule also provides that a client who wishes to waive the rights of the constitutional provision, as those rights may relate to attorney's fees, must do so in the form contained in the rule.
Rule 4-1.5(f)(6) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis. This prohibition does not apply if the lawyer's fee is being paid over the same length of time as the schedule of payments to the client.
Contingent fees are prohibited in criminal and certain domestic relations matters. In domestic relations cases, fees that include a bonus provision or additional fee to be determined at a later time and based on results obtained have been held to be impermissible contingency fees and therefore subject to restitution and disciplinary sanction as elsewhere stated in these Rules Regulating The Florida Bar.
Fees that provide for a bonus or additional fees and that otherwise are not prohibited under the Rules Regulating the Florida Bar can be effective tools for structuring fees. For example, a fee contract calling for a flat fee and the payment of a bonus based on the amount of property *1051 retained or recovered in a general civil action is not prohibited by these rules. However, the bonus or additional fee must be stated clearly in amount or formula for calculation of the fee (basis or rate). Courts have held that unilateral bonus fees are unenforceable. The test of reasonableness and other requirements of this rule apply to permissible bonus fees.
Division of fee [No Change]
Disputes over fees [No Change]
Referral fees and practices [No Change]
Credit Plans [No change]
NOTES
[1] Rule Regulating the Florida Bar 1-12.1(f) states that "[p]etitions to amend these Rules Regulating the Florida Bar may be filed by the board of governors or by 50 members in good standing, provided that any amendments proposed by members of the bar shall be filed 90 days after filing them with The Florida Bar."
[2] The proposal was then published for comment in The Florida Bar News. Literally hundreds of comments were received from Florida attorneys, various organizations, and private citizens alike, with almost all of the comments opposing the proposed amendment.
[3] We have added the language advising the client of the right to have a hearing on the waiver before a judge.
[4] In reaching this conclusion, we also rely upon the representation of The Florida Bar, in its submission to this Court, that its decision to propose a rule that does not require judicial approval of all waivers was based, in part, upon input from current members of the judiciary regarding their actual experience with waivers. According to the Bar, judges who were consulted advised that because judicial review under the current rule is ex parte, with no opposition stated, it is "in effect, a form over substance requirement," and they indicated that "judicial review, if required in this waiver scenario, would likely unfold as it does for current judicial review of fees in excess of the stated maximum fees in 4-1.5(f)(4)(B)(i)." (Fla. Bar's Notice of Filing 4.) Additionally, we rely upon the Bar's representation that under the current review procedures, no complaints of overreaching have been made and that judges who were consulted were of the opinion that complaints would not be made even if judicial oversight were required for all waivers. (Fla. Bar's Notice of Filing 5.)